UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SIYA CREEL

VERSUS

CITY OF BATON ROUGE/PARISH OF
EAST BATON ROUGE D/B/A BATON
ROUGE POLICE DEPARTMENT AND
MURPHY PAUL, INDIVIDUALLY AND IN
HIS OFFICIAL CAPACITY AS CHIEF OF
POLICE

CIVIL ACTION

20-880-SDD-EWD

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court on the *Motion for Preliminary Injunction* filed by Siya Creel ("Plaintiff").[1] Defendants City of Baton Rouge/Parish of East Baton Rouge, d/b/a Baton Rouge Police Department, and Murphy Paul, individually and in his official capacity as Chief of Police ("Defendants") opposed this motion,[2] and the Court held an evidentiary hearing on the matter on March 3, 2021. After Plaintiff rested his case, Defendants moved for a Rule 52(c) Judgment, which the Court granted and assigned oral reasons therefor, and denied Plaintiff's motion for injunctive relief. The Court reserved its right to supplement those findings of fact and conclusions of law, and the Court now supplements as set forth below.[3] The Court hereby adopts and incorporates by reference all oral reasons assigned on March 3, 2021.

---

[1] Rec. Doc. No. 11.
[2] Rec. Doc. No. 18. Plaintiff filed a *Reply* at Rec. Doc. No. 21.
[3] To the extent that any finding of fact constitutes a conclusion of law, the court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the court hereby adopts it as such.

## I.    MANDATORY PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.[4]  A plaintiff seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that their substantial injury outweighs the threatened harm to the party whom they seek to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest.[5]

The decision to grant or deny a preliminary injunction is discretionary with the district court.[6] However, because a preliminary injunction is an extraordinary remedy, it "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements."[7]  Consequently, the decision to grant a preliminary injunction "is the exception rather than the rule."[8]

In addition, mandatory preliminary relief "which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."[9]  Because "[a]n indispensable prerequisite to issuance of a preliminary injunction is prevention of

---

[4] *Munaf v. Geren*, 553 U.S. 674, 689, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008).
[5] *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012); *accord Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).
[6] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).
[7] *Suehs*, 692 F.3d at 348.
[8] *Miss. Power & Light Co.*, 760 F.2d at 621.
[9] *Three Expo Events, L.L.C. v. City of Dallas, Texas*, 182 F.Supp.3d 614, 622 (N.D. Tex. 2016)(quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)).

irreparable injury, [o]nly in rare instances is the issuance of a mandatory preliminary injunction proper."[10]

The purpose of a preliminary injunction is limited to preserving the relative positions of the parties until a trial on the merits can be held.[11] "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."[12] For this reason, the findings of fact and conclusions of law made by a court deciding whether to grant a preliminary injunction are not binding at trial on the merits.[13]

Evidence at the hearing established that Plaintiff was terminated by Defendants on December 15, 2020. Therefore, the Court finds that Plaintiff seeks a mandatory preliminary injunction.

## II.   EXHAUSTION OF REMEDIES

The Court has subject matter jurisdiction over the First Amendment and Fourth Amendment constitutional claims asserted by Plaintiff. Redress for civil rights violations pursuant to 42 U.S.C. § 1983 does not require exhaustion of state law remedies or procedures.[14] In *Patsy v. Board of Regents*,[15] the Supreme Court categorically rejected any such impediment to bringing a Section 1983 suit. The Court found that imposing an exhaustion requirement would be inconsistent with Congress' intent in enacting section 1983, *i.e.*, protecting individuals' basic federal rights against incursions by state power.[16]

---

[10] *Tate v. American Tugs, Inc.*, 634 F.2d 869, 870 (5th Cir. 1981) (internal quotation marks omitted).
[11] *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).
[12] *Id.*
[13] *Id.*
[14] *See Myrick v. City of Dallas*, 810 F.2d 1382, 1388 (5th Cir.1987).
[15] 457 U.S. 496 (1982).
[16] *Id.* at 503, 102 S.Ct. at 2561.

Where a plaintiff can successfully prove, by a clear and substantial likelihood of success on the merits, that a person acting under color of law deprived him of a right guaranteed by the Constitution or laws of the United States, the plaintiff need not demonstrate exhaustion of administrative remedies as federal law imposes no such requirement, and overlapping state remedies are generally irrelevant to the question of whether a cause of action exists under section 1983.[17]

The Court lacks jurisdiction over Plaintiff's ADA claims at this stage for two reasons. First, there is an issue of fact, not resolved to the Court's satisfaction, as to whether Plaintiff's ADA claim was exhausted through the EEOC. Second, the Court finds that Plaintiff's ADA claims must also be exhausted via the state administrative remedy procedures provided by state law. In *Pike v. Office of Alcohol & Tobacco Control of the Louisiana Dep't of Revenue*, the plaintiff sued her employer state agency for disability discrimination, harassment, and retaliation under the ADA & the LEDL.[18] The plaintiff sought reinstatement to her position, back and front pay, and restoration of full seniority rights and other benefits.[19] Judge deGravelles held that the Civil Service Commission "ha[d] exclusive jurisdiction over termination claims, including termination claims based on disability discrimination."[20] However, the Court also held that it had jurisdiction over the plaintiff's general state tort damages because "the CSC has no authority to provide for general tort damages."[21] As was established at the preliminary injunction hearing, the Court did consider the damages aspect of Plaintiff's requested relief.

---

[17] *Zinermon v. Burch*, 494 U.S. 113, 124, 110 S.Ct. 975, 982, 108 L.Ed. 22 100 (1990).
[18] 157 F. Supp. 3d 523 (M.D. La. 2015). Although Plaintiff correctly notes that his appeal is to the Police Civil Service Board, not the Civil Service Commission, the Court finds that *Pike* is still instructive in principle.
[19] *Id.* at 529.
[20] *Id.* at 540.
[21] *Id.* at 541 (citing *Stevenson v. Williamson*, 547 F.Supp.2d 544, 557 (M.D. La. 2008).

### III. FIRST AMENDMENT FREEDOM OF SPEECH/ASSOCIATION

The Court finds that Plaintiff only vaguely pled a facial challenge to the BRPD social media policy, and Plaintiff did not brief any legal principles regarding a facial constitutional challenge; Plaintiff only articulated this challenge in arguing against Defendant's Rule 52 motion at the preliminary injunction hearing. Plaintiff's briefing and presentation of his case at the hearing focused on an as-applied challenge to the BRPD social media policy. Issues such as vagueness and overbreadth have not been alleged, briefed, or supported with evidence or testimony. Indeed, relief in the form of the Court declaring the BRPD social medial policy unconstitutional on its face is not sought in Plaintiff's *Amended Complaint*[22] or his *Supplement Motion for Injunctive Relief*.[23] As such, the Court considered Plaintiff's First Amendment claims as an "as-applied" challenge to the BRPD social media policy.

As stated in oral reasons, the Court finds that there are issues of fact regarding whether Defendants lawfully applied the BRPD social media policy to Plaintiff in retaliation for his speech and union activity. However, the Court also stated that Plaintiff's credibility was seriously undermined at the hearing because, on several key points, Plaintiff's sworn hearing testimony and supporting evidence inexplicably controverted his sworn Affidavit. Primarily for this reason, the Court found that Plaintiff could not satisfy the very heavy burden of demonstrating a clear likelihood of success on the merits such that a mandatory preliminary injunction should issue.

---

[22] Rec. Doc. No. 14.
[23] Rec. Doc. No. 11.

Courts have consistently held that preliminary injunctions are not appropriate in cases permeated with factual disputes.[24] In *Van Nortrick v. Lavespere*, Judge deGravelles in another section of this Court denied a prisoner's motion for a preliminary injunction, finding:

> "While Plaintiff has presented evidence indicating that he might win at a trial on the merits, there are too many unresolved issues of fact and medical expert opinion to conclude on the record before it that there is a "substantial likelihood" of success so as to warrant a preliminary injunction."[25]

This Court also denied a request for similar injunctive relief in *Randolph v. East Baton Rouge Parish School Board*,[26] an employment dispute where plaintiff claimed she had been constructively discharged after being subjected to discrimination and harassment and sought a preliminary injunction at the inception of the case seeking that the defendant school board be ordered to follow its own policies and procedures and enjoined from "harassing, intimidating, and humiliating" the plaintiff.

Accordingly, while Plaintiff has presented evidence such that he may succeed at trial on this claim, considering the extremely high burden applied to this motion, there are too many unresolved issues of fact to warrant a mandatory preliminary injunction.

## IV.    FOURTH AMENDMENT CLAIMS

The Court found that Plaintiff failed to demonstrate a substantial likelihood of success on the merits as to his Fourth Amendment claim that he had a reasonable expectation of privacy in his work emails, and the Defendants' audit of his work computer

---

[24] *Goodman v. Dell Publishing Co.*, 1995 WL 301380, *2 (E.D. La. May 15, 1995).
[25] 2019 WL 852121, *5 (M.D. La. Feb. 22, 2019)(citing *Cement Enamel Dev., Inc. v. Cement Enamel of New York, Inc.*, 186 F. Supp. 803, 804 (D.C.N.Y. 1960)(" Where issues of fact are involved, the drastic remedy of preliminary injunction should not be granted until the facts have been tested out in the crucible of oral examination and cross-examination.")).
[26] 2016 WL 3579224 (M.D. La. June 28, 2016).

was unlawful. Evidence was admitted demonstrating that Plaintiff signed an acknowledgment of the BRPD's right to access officers' work computers at any time. Further, In *Pack v. Wood County, Texas*, the court held that a county employee did not have a reasonable expectation of privacy in his work computer because the computer was in the employee's work office, was owned by and paid for by the county, and was provided to the employee in connection with his duties as Justice of the Peace.[27] Other than conclusory statements and speculative accusations, the employee put forth no meaningful evidence that he had a subjective expectation of privacy in his county-owned computer. Relying on long-settled Fifth Circuit jurisprudence, the court explained:

> A Fourth Amendment analysis requires a determination of whether Plaintiff had a constitutionally protected reasonable expectation of privacy. *United States v. Ward*, 561 F.3d 414, 417 (5th Cir.2009). Plaintiff had a reasonable expectation of privacy if he can show an actual, subjective expectation of privacy with regard to his work computers and if he can show an objectively reasonable expectation of privacy as well. *Id.* Employees' expectations of privacy in the workplace are reviewed on a case-by-case basis. *O'Conner v. Ortega*, 480 U.S. 709, 718, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). While private employees may have a reasonable expectation of privacy, *id.* at 716, **public employees' expectation of privacy may be reduced by office practices, procedures, or legitimate regulation.** *Id.* at 717. **Further, a public employee's privacy interest in his or her place of work is far less than that in their home or other personal places.** *Ortega*, 480 U.S. at 725.[28]

Plaintiff relied heavily on the Supreme Court's decision in *City of Ontario, Cal. v. Quon*, wherein a police officer brought a Section 1983 action against the city and other defendants alleging that the department's review of the officer's text messages violated the Fourth Amendment.[29] Notably, the *Quon* Court stated that, under the approach of the *O'Connor* plurality, when conducted for a "noninvestigatory, work-related purpos[e]" or for

---

[27] No. CIV.A. 6:08CV198, 2009 WL 1922897 (E.D. Tex. July 1, 2009).
[28] *Id.* at *8 (emphasis added).
[29] 560 U.S. 746 (2010).

the "investigatio[n] of work-related misconduct," a government employer's warrantless search is reasonable if it is "'justified at its inception'" and if "'the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of'" the circumstances giving rise to the search." [30] Ultimately, the *Quon* Court found that the plaintiff's constitutional rights were not violated:

> Furthermore, and again on the assumption that Quon had a reasonable expectation of privacy in the contents of his messages, the extent of an expectation is relevant to assessing whether the search was too intrusive. Even if he could assume some level of privacy would inhere in his messages, it would not have been reasonable for Quon to conclude that his messages were in all circumstances immune from scrutiny. Quon was told that his messages were subject to auditing. **As a law enforcement officer, he would or should have known that his actions were likely to come under legal scrutiny, and that this might entail an analysis of his on-the-job communications. Under the circumstances, a reasonable employee would be aware that sound management principles might require the audit of messages to determine whether the pager was being appropriately used.** Given that the City issued the pagers to Quon and other SWAT Team members in order to help them more quickly respond to crises—and given that Quon had received no assurances of privacy—Quon could have anticipated that it might be necessary for the City to audit pager messages to assess the SWAT Team's performance in particular emergency situations.
>
> From OPD's perspective, the fact that Quon likely had only a limited privacy expectation, with boundaries that we need not here explore, lessened the risk that the review would intrude on highly private details of Quon's life. OPD's audit of messages on Quon's employer-provided pager was not nearly as intrusive as a search of his personal e-mail account or pager, or a wiretap on his home phone line, would have been. That the search did reveal intimate details of Quon's life does not make it unreasonable, for under the circumstances a reasonable employer would not expect that such a review would intrude on such matters. **The search was permissible in its scope.**[31]

Courts have noted the limitations of the *Quon* decision. In *Adkisson v. Paxton*, the court stated: "The Supreme Court's opinion in *Quon* does not establish a broad right to

---

[30] *Id*. at 761.
[31] *Id.* at 762-63 (emphasis added).

privacy that would necessarily protect public information contained in a government official's personal e-mail account. Here, as in *Quon*, it would not be reasonable for the Commissioner to conclude that his communications were in all circumstances immune from scrutiny."[32]

At the close of Plaintiff's case on this motion, applying the jurisprudence to the facts, the Court found that Plaintiff failed to demonstrate a clear and substantial likelihood of success on the merits of his Fourth Amendment claim as it relates to his work emails.

Plaintiff claims Defendants' December 15, 2020 Press Release addressing Plaintiff's termination attached a photograph of Plaintiff in violation of La. R.S. 40:2532, and a subsequent press release disclosing Plaintiff's health care insurance coverage information. The court questions its jurisdiction over these claims as they allege violations of Louisiana statutes; thus, the Court may lack jurisdiction over such matters if they are pending before the Police Civil Service Board, for which Plaintiff has a hearing date next month. Further, these claims are irrelevant to prospective injunctive relief.

Notably, Chapter 40 is entitled "Rights of a Law Enforcement Officer *While Under Investigation*." And, Section 2531 limits its applicability to "police employees" as defined by § 40:1372(5), which defines a "'police employee' [as] any employee who is assigned to police work as a police offer pursuant to R.S. 40:1739." Thus, it was not established to a certainty that Plaintiff was protected by these statutes as the information was released when he was no longer a police officer. On the other hand, if Plaintiff proves violations of these statutes that should have protected him, damages for proven violations on the part of the Defendants are available to compensate any harm. As stated previously, Plaintiff

---

[32] 459 S.W.3d 761, 776-77 (Tex.App.-Austin 2015)(citations omitted).

may succeed on these claims at trial; however, Plaintiff has failed to carry his particularly high burden for issuance of a mandatory preliminary injunction.

Accordingly, for the foregoing reasons and the oral reasons assigned on March 3, 2021, Plaintiff's *Motion for Preliminary Injunction* is DENIED.[33]

Baton Rouge, Louisiana, this 8th day of March, 2021.

_____
SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[33] Rec. Doc. No. 11.